GRITT, JUDGE:
Claimant brought this action for damages resulting from an alleged breach of contract for the operation of a diorama and show at the Cass Scenic Railroad State Park, a facility of the respondent. The Court is of the opinion to make an award in this claim for the reasons more fully stated below.
On or about April 7,1997, claimant and respondent entered into a contract for the operation of a diorama and an audio/video program at the Cass Scenic Railroad State Park (hereafter Cass). This was a new contract agreed to by the parties, although the parties had previously entered into contracts for the operation of the same diorama. The contract term was from April 7, 1997 to March 31, 2001. The contract provided that claimant was to operate the diorama during the months that Cass was open, from Memorial Day weekend until the end of October. According to the contract, claimant was to be paid $0.50 on each train ride ticket sold at Cass. Further, claimant was allowed to sell merchandise along with the operation of the diorama, and he was to pay fifteen percent (15%) of all gross receipts on merchandise sold and diorama ticket sales sold by claimant to the respondent. Claimant did not sell any tickets to the public for viewing the diorama during the period of this contract.
On January 23, 2001, a meeting was held between Bob Beanblossom, District Administrator with the Parks and Recreation section of tire Division of Natural Resources, Billy Thomas, then superintendent at Cass, and claimant. At this meeting, Mr. Viars was informed that respondent would not be renewing the contract in the same form as it had been during the duration of the 1997 to 2001 contract. Mr. Viars was offered three options in the meeting: 1) a new contract with respondent which would provide that he would sell separate tickets to the public at the door for viewing the diorama and showcase; 2) respondent would buy the diorama from Mr. Viars outright; or 3) respondent would lease the diorama from Mr. Viars. Claimant stated in the meeting that he did not want to sell the diorama. The contract expired of its own terms on March 31,2001.
In May 2001, claimant was contacted by Mr. Thomas to open the diorama and show for rail fan groups which were to be at Cass prior to its annual season. Claimant had opened the show before the season on weekends for rail fan groups in previous years. Before the beginning of the season, but after the rail fan groups came to Cass, claimant agreed to sell the diorama to respondent for $9,995.00. Claimant was not compensated for the operation of the diorama during the month of May 2001.
It is claimant’s position that his company, Cass Diorama, overpaid respondent fifteen percent (15%) of the $0.50 per train ride ticket sold at Cass that it was paid during the duration of its contract with respondent, an amount that was not included in the contract, for an alleged loss of $32,500.00. Claimant also contends that respondent ordered his staff to stop selling T-shirts for 30 days, in spite of the fact that the contract with respondent provided for the sale of merchandise, for a loss of $2,000.00. Mr. Viars further alleges that respondent requested that claimant open the diorama and show in May 2001, but he was not paid for running the show during this time, resulting in a loss of revenue of $5,000.00. Additionally, claimant alleges that respondent forced him to sell the diorama, valued at $75,000.00, for $9,995.00, resulting in a $65,005.00 loss. Claimant’s total alleged loss is in the amount of $104,505.00.
*228 The position of the respondent was that the contract with Mr. Viars expired of its own terms on March 31,2001. Respondent offered claimant three options for a new contract, one of which was for respondent to buy the diorama outright from Mr. Viars. Claimant eventually offered to sell the diorama for $10,000.00, but the final sale price was $9,995.00. Respondent further contends that there was an agreement in the contract whereby claimant was to pay respondent fifteen percent (15%) of all gross receipts on merchandise sold and diorama ticket sales sold by the contractor. Respondent subtracted the fifteen percent (15%) for the diorama ticket sales from the $0.50 they paid him for each railroad ticket sold by respondent.
DISCUSSION
The evidence adduced at hearing established that Mr. Viars originally approached Cass about building the diorama and running the show in the mid-1980s. Claimant built the diorama to look like the town of Cass between 1900 and 1930 with the help of others and collected information and photographs that were put together into a slide show. Claimant and respondent agreed to a new contract in 1997 for the operation of the diorama at Cass. Under this contract, claimant was to receive $0.50 for every train ride ticket sold. Claimant was also allowed to sell merchandise of which fifteen percent (15%) of the gross receipts would be paid to respondent. According to the contract, fifteen percent (15%) of all gross receipts on diorama ticket sales sold by claimant was also to be repaid to respondent. There were no diorama tickets sold during the entirety of the contract. However, evidence adduced at the hearing established that respondent subtracted fifteen percent (15%) from the $0.50 per ticket that claimant received from respondent. Mr. Beanblossom testified that it was his understanding that while there were no diorama tickets sold, these diorama tickets were included within the price of the train ride ticket. He stated that the fifteen percent (15%) was automatically taken out before sending Mr. Viars his share of the total tickets sold eachmonth. Claimant testified that on several occasions he mentioned this fifteen percent (15%) that was being taken out of his payment to Mr. Beanblossom and how he did not think that he was supposed to pay this according to the contract. Mr. Viars also brought up this payment of fifteen percent (15%) to Mr. Thomas during a meeting in the spring of 2001. Claimant stated that at that time he thought that this was the reason that respondent wanted to rework the contract and did not want a contract similar to the contract of 1997 to 2001. Over the four year period of the contract, respondent deducted $ 19,146.15 from the $0.50 per ticket it paid Mr. Viars as per the contract terms.
The Court is of the opinion that respondent wrongfully withheld the fifteen percent (15%) from the amount that it paid claimant for the $0.50 per train ride ticket sold. While there was a provision in the contract that provided for claimant to pay the respondent fifteen percent (15%) of the gross receipts based upon any diorama tickets that were sold, the contract did not purport to include the cost of diorama tickets in the price of train ride tickets. Respondent stated that it understood the contract to include the cost of the diorama tickets in the price of the train ride ticket. The fact that there were separate provisions in the contract which set out “diorama ticket sales” and “train ride tickets” is indicative that the diorama tickets were not included in the price of the train ride tickets. Therefore, the Court is of the opinion to malee an award of$19,146.15to claimant.
*229 The claimant’s second claim is for a loss that resulted when respondent stopped his staff from selling T-shirts at the diorama. According to the terms of the contract entered into by claimant and respondent, Mr. Viars was allowed to sell merchandise at the diorama. During the term of the contract, Mr. Viars testified that the only merchandise he sold was T-shirts. Jerry Wilson, who was employed by Mr. Viars to operate the diorama during the season, testified that these shirts sold for $11.95. Mr. Wilson stated that at some point in July or August of 2000, he was approached by an employee of respondent and tol d to stop sell ing the T-shirts. He testified that he was kept from selling the shirts for a couple of weeks and then he was told that he could resume selling them. Mr. Wilson estimated that during a two week period he probably sold $500.00 to $1,000.00 worth of shirts at the diorama. Billy Thomas, Superintendent at Cass from May 2000 to August 16,2002, testified that he had asked Mr. Wilson to stop selling the shirts briefly in July of 2000. Mr. Thomas stated that another employee of respondent had approached him and informed him that Mr. Wilson was selling shirts at the diorama and that this might be in violation of the contract between claimant and respondent. Mr. Thomas then asked Mr. Wilson to stop selling the shirts. Mr. Thomas was then advised by a superior in the Division of Natural Resources that he should allow the sale of the T- shirts. He was of the opinion that he had stopped the sale of the shirts for one day at most. Claimant testified that to his knowledge at least one week went by when the staff was not allowed to sell shirts. The Court concludes that Mr. Viars was permitted to sell merchandise according to the contract and that respondent wrongfully prevented him from selling the T-shirts for one week. This resulted in a loss for claimant of $500.00. Therefore the Court is ofthe opinion to and does make an award of $500.00 to claimant.
Claimant also alleges that he was not compensated for opening the diorama for rail fan groups in the spring of 2001. In May 2001, claimant opened the diorama early at the request of the respondent for rail fan groups who visited Cass prior to the official opening of the season. Mr. Viars and Jerry Wilson had to work for a couple of weeks to get the diorama ready for the early opening. Mr. Wilson stated that Cass would routinely open for visits from rail fan groups and that the diorama would also open early every year for these visitors. Billy Thomas testified that this was a common request each spring. The rail fan groups paid a group rate based upon the number of visitors that came to Cass. There were three groups that came to Cass in May 2001. All three groups typically brought a total of 335 people to Cass each year when they came in May. Mr Thomas further stated that Mr. Viars was not compensated for opening and running the diorama in May 2001. Respondent found evidence of a payment to Mr. Viars in 1998 for rail fan groups coming to Cass in the month of May that particular year. The documents established that claimant was paid $0.50 per person for each rail fan group that came to Cass.
The Court is of the opinion that respondent was responsible for compensating claimant for the work he did in opening the diorama during the month of May 2001, as respondent had previously compensated Mr. Viars for similar events. Based upon the evidence that it was typical for there to be approximately 335 total visitors to Cass with the rail fan groups, the Court is of the opinion to and does make an award to claimant in the amount of $167.50.
*230 The last assertion made by claimant is based upon the sale of the diorama to respondent. Claimant alleges that he was forced to sell the diorama for $9,995.00, resulting in a loss of $65,005.00. The sale of the diorama came about after the January 23,2001, meeting between Mr. Beanblossom, Mr. Thomas, and Mr. Viars. At that time, claimant was offered the previously discussed three options of respondent leasing the diorama from claimant, claimant selling his own tickets to the public at tire door for viewing the diorama, or respondent would buy the diorama outright from claimant. Claimant stated that he informed Mr. Beanblossom at the meeting that he did not want to sell the diorama. Both Mr. Viars and Mr. Beanblossom stated that after the meeting each of them thought that there was going to be a new contract in some form or another. Mr. Viars eventually contacted Mr. Thomas and stated that he would be willing to sell the diorama for $ 10,000.00. Claimant contended that he came to this decision only after being told that he had to either sell the diorama or remove it from the building it was in, which according to claimant was not a valid option. Mr. Thomas contacted Mr. Beanblossom concerning claimant’s offer. Mr. Beanblossom informed Mr. Thomas that because of purchasing guidelines, they could pay $9,999.00 or less right away. Mr. Viars eventually agreed, and on June 6, 2001, an agreement to sell was reached for a price of $9,995.00.
The Court is of the opinion that the decision made by Mr. Viars was a business decision that he made of his own accord. Testimony from both claimant and respondent established that while the contract was not going to be renewed by respondent, three options were given to claimant including selling the diorama to respondent. There was no evidence presented that indicated that respondent eliminated the other options and forced claimant to sell the diorama. Therefore, claimant’s claim for the alleged lost value on the sale of the diorama is denied.
In accordance with the findings of fact as stated herein above, the Court is of the opinion to and does make a total award to claimant in the amount of $19,813.65.
Award of $19,813.65.